UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

AMERICAN NATIONAL PROPERTY AND CASUALTY CO.,

                    Plaintiff(s),

     v.

BIRRANEY ROBERTSON, et al.,

                    Defendant(s).

Case No.2:24-CV-1484  JCM (EJY)

ORDER

Presently before the court is defendants Brittaney Robertson ("Brittaney") and Wesley Robertson ("Wesley") (collectively "defendants")'s motion to abstain.[1]  (ECF No. 29).   Plaintiff American National Property and Casualty Company ("ANPC") ("plaintiff") filed a response (ECF No. 33), to which defendants replied (ECF No. 34).

Also before the court is plaintiff's motion for summary judgment.  (ECF No. 30). Defendants filed a response (ECF No. 37), to which plaintiff replied (ECF No. 38).

I.     **Background**

This is a declaratory judgment action brought by plaintiff, an insurance company, to determine the scope of insurance coverage as between plaintiff and its two insured parties.  (ECF No. 23 at 5).  Plaintiff issued a homeowners insurance policy ("the policy") to defendants, which provides personal liability coverage up to $500,000 for qualifying occurrences. (*See id.*).

---

[1] The motion is captioned as a motion to dismiss on the docket.

Defendants Brittaney Robertson and Wesley Robertson are married and have a minor son, E.R. (*Id.* at 3); (*see* ECF No. 30-3 at 31). E.R. is a member of Tigers Baseball ("Tigers"), a little league team based in southern Nevada. (ECF No. 23 at 3). Defendants hired Kody Gorden ("Gorden"), one of the Tigers coaches, to give E.R. private coaching lessons. (*Id.*). During the course of those private lessons, Gorden and Brittaney allegedly entered into an intimate or romantic relationship. (*Id.*).

Wesley eventually learned of the relationship between Brittaney and Gorden and insisted that it end. (*Id.*). The situation ultimately led to the filing of a lawsuit ("the underlying action/litigation") in Nevada state court, in which Defendants sued, among others, Gorden and Fraser Inouye ("Inouye"). (*Id.*).

In the underlying action, defendants base their claims on allegations of sexual extortion and/or the sexual affair between Brittaney and Gorden. (*Id.* at 4). Brittaney claims that Gorden subjected her to unwanted harassment via text messages and social media. (*Id.*). She also alleges that she sent Gorden inappropriate photos and videos. (*Id.*). Additionally, Brittaney contends that Inouye distributed these inappropriate photos and videos to third parties without her consent. (*Id.*). In response to the underlying litigation, Inouye asserted counterclaims against Brittaney and Wesley. (*Id.*).

Defendants reported the counterclaims to plaintiff and now seeks both indemnification and defense from plaintiff. (*Id.* at 5). After investigating the facts, plaintiff concluded that Inouye has not alleged any claims constituting an occurrence under the policy and that coverage therefore does not apply. (*Id.* at 6).

Nevertheless, plaintiff agreed to defend defendants in the underlying litigation, subject to a reservation of rights. (*Id.*). That reservation of rights permits plaintiff to bring this declaratory

judgment action to resolve whether it is obligated to indemnify and defend defendants in the underlying action.  (*Id.*).

**II.      Motion to Abstain**

As an initial matter, this court may properly exercise jurisdiction over this case pursuant to 28 U.S.C. § 2201.  Federal courts ordinarily have a duty to exercise the jurisdiction conferred upon them.  *Walnut Props., Inc. v. City of Whittier,* 861 F.2d 1102, 1106 (9th Cir. 1988) (citing *World Famous Drinking Emporium v. City of Tempe,* 820 F.2d 1079, 1082 (9th Cir. 1987)).  The abstention doctrines represent a narrow exception to this obligation, applicable only when significant countervailing interests are present.  *Id.*  The fact that related litigation is simultaneously pending in state court does not, standing alone, deprive a federal court of subject matter jurisdiction or require it to decline to act.  *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817–18 (1976).

Nonetheless, under certain well-recognized circumstances, the pendency of parallel state proceedings may warrant a federal court's decision to stay its hand and decline to exercise jurisdiction.  *See id.* at 813–17.  These circumstances have been articulated through the various abstention doctrines developed by the Supreme Court.  *See id.*

This case involves the application of the *Brillhart* abstention doctrine.  Under the *Brillhart* doctrine, district courts have broad discretion to stay or dismiss actions seeking declaratory judgment, as recognized in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494–95 (1942) and *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995); *see also* 28 U.S.C. § 2201 (federal courts "*may* declare the rights and other legal relations of any interested party seeking such declaration" (emphasis added)).  The *Brillhart* doctrine rests on concerns about judicial economy and cooperative federalism.  *Brillhart,* 316 U.S. at 495.  Considering these concerns, district courts

consider three primary factors when evaluating whether to abstain from hearing a case under *Brillhart*: "[1] avoiding 'needless determination of state law issues'; [2] discouraging 'forum shopping'; and [3] avoiding 'duplicative litigation.'" *R.R. St. & Co. Inc. v. Transp. Ins. Co.,* 656 F.3d 966, 975 (9th Cir. 2011) (quoting *Gov't Emps. Ins. Co. v. Dizol,* 133 F.3d 1220, 1224 (9th Cir. 1998)). Defendants do not meaningfully engage with the first two elements; thus, the court finds that they weigh in favor of exercising jurisdiction.

Defendants' principal contention—apart from the assertion that the court may decline to exercise jurisdiction on discretionary grounds—is that the instant action is duplicative of pending state court proceedings. The court is not persuaded. The concern underlying this factor is judicial economy, specifically, preventing state and federal courts from independently and unnecessarily duplicating each other's work. *Snodgrass v. Provident Life and Acc. Ins. Co.,* 147 F.3d 1163, 1167–68 (9th Cir.1998).

The underlying state court action involves claims between defendants and third parties; plaintiff is not a party to that litigation. Moreover, the state court proceedings do not concern the disputed question of insurance coverage at issue here. (*See* ECF No. 30-1 at 8–12). Although defendants maintain that plaintiff bears an obligation to indemnify them in connection with the underlying action, the substantive issues presented in state court are distinct form those before this court. Accordingly, the court concludes that the exercise of jurisdiction would not give rise to duplicative litigation.

In addition to the three primary factors described above, courts in the Ninth Circuit consider secondary factors as well. These factors include:

> [1] whether the declaratory action will settle all aspects of the controversy; [2] whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory action is being sought merely for the purpose of procedural fencing or to obtain a 'res judicata' advantage; or [4] whether

the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider [5] the convenience of the parties; and [6] the availability and relative convenience of other remedies.

*Dizol,* 133 F.3d at 1225 n. 5.

In this case, the court's resolution of the declaratory action will address the entirety of the controversy between the parties—namely, whether plaintiff bears an obligation to indemnify defendants in connection to the underlying litigation. Exercising jurisdiction will serve to clarify the legal relationship between plaintiff and defendants. Moreover, a determination in this action will not affect the merits of the underlying dispute in a manner that would give rise to res judicata concerns for either party. Finally, because this court is called upon to resolve only the discrete question of insurance coverage, there is no danger of friction or entanglement between the federal and state court systems. For these reasons, the court concludes that abstention is not warranted in this matter.

The court now turns to plaintiff's motion for summary judgment.

**III.    Motion for Summary Judgment**

A.  Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come

- 5 -

forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the

nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

"Authentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) (footnotes omitted) (quoting Fed. R. Evid. 901(a)). "Th[e Ninth Circuit] has consistently held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir. 1994) (quoting *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987)).

However, the Ninth Circuit has more recently held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")); *see also JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) ("[A]t summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony.").

B.  Legal Standard for Duty to Defend or Indemnify

The interpretation of an insurance contract is a question of law for the court. *Powell v. Liberty Mut. Fire Ins. Co.,* 252 P.3d 668, 672 (Nev. 2011). "An insurance policy should be read

as a whole, and its language should be analyzed from the perspective of one untrained in law or in the insurance business.  Policy terms should be viewed in their plain, ordinary and popular connotations." *Fourth St. Place v. Travelers Indem. Co.*, 270 P.3d 1235, 1239 (Nev. 2011), *as modified on reh'g* (May 23, 2012) (quotation omitted).  "[A]ny ambiguity or uncertainty in an insurance policy must be construed against the insurer and in favor of the insured." *Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 621 (Nev. 2011) (quotation omitted).  "A provision in an insurance policy is ambiguous if it is reasonably susceptible to more than one interpretation." *Id.* (quotation omitted).  "Ultimately, a court should interpret an insurance policy to effectuate the reasonable expectations of the insured." *Powell,* 252 P.3d at 672 (quotation omitted).

C.   Discussion

1.   *Duty to Defend and Duty to Indemnify*

Plaintiff asserts that the conduct for which defendants seek defense and indemnification do not fall within what is covered by the policy.  Defendants attack plaintiff's motion for summary judgment by discussing an insurer's duty to defend and indemnify.

Defendants correctly assert that an insurer "bears a duty to defend its insured whenever it ascertains facts which give rise to a potential for coverage under the policy," *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004).  However, defendants misunderstand the legal question before the court.

In *Benchmark*, the Supreme Court of Nevada stated that "an insurer's duty to defend is triggered whenever the potential for indemnification arises, and it continues until this potential for indemnification ceases." *Benchmark*, 254 P.3d at 621.  Thus, the crucial first step is to compare the allegations of a complaint with the terms of the policy to see if the duty to indemnify is implied. *United Nat'l Ins. Co.*, 99 P.3d at 1158 (citing *Morton by Morton v. Safeco Ins. Co.*, 905 F.2d 1208, 1212 (9th Cir. 1990)).

In cases cited by defendants in their opposition, including *Benchmark*, the issue of whether the policy covers the insured's conduct is not disputed, as it is here.  The issue of policy coverage is what plaintiff is requesting the court to resolve, and the court will do exactly that.

. . .

### 2. Policy Coverage

Defendants' seek coverage through their personal liability coverage of $500,000 per "occurrence." (*See* ECF No. 30-1 at 87). The personal liability coverage is governed by Section II of the insurance plan. Section II states that plaintiff will "pay up to [its] **limit of liability** for **bodily injury** or **property damage** that an **insured** is legally obligated to pay resulting from an **occurrence** covered by this policy." (*Id.* at 105) (emphasis in original). Paragraph 14 of the definition section of the policy specifically addresses what constitutes an "occurrence" as relating to personal liability in Section II:

> 14. This definition applies to Section II only:
> **"occurrence,"** when used in Section II of this policy, means an accident, including exposure to conditions, which results in:
>
> a. **bodily injury**; or
> b. **property damage**;
>
> during the policy period. Repeated or continuous exposure to substantially the same general conditions is considered to be one **occurrence**. The originating incident must occur during the policy period for coverage to exist.

(*Id.* at 92) (emphasis in original).

Paragraph 2 defines bodily injury as "injury to the body of a human being, including sickness, disease, or death which results from the injury." (*Id.* at 90). Paragraph 17 defines property damage as "physical injury to or destruction of tangible property, including loss of use of this property." (*Id.* at 92).

Defendants sued multiple third parties in state court, including Inouye. Inouye brought the following counterclaims against defendants in the state court action:
1. Invasion of Privacy – False Light
2. Abuse of Process
3. Intentional Infliction of Emotional Distress
4. Intentional Interference with Prospective Economic Advantage
5. Concert of Action
6. Defamation

(ECF No. 30-3 at 18–32). It is these counterclaims that defendants claim plaintiff is obligated to indemnify them for. However, none of the counterclaims brought by Inouye are premised on an occurrence which resulted in bodily injury or property damage as required by the policy.

Despite defendants' strenuous efforts to manufacture ambiguity where none exists, the court flatly rejects the contention that the terms of the policy are ambiguous. The policy defines every material term in "plain and ordinary" language readily comprehensible to "one not trained in law." *United Nat'l Ins. Co.*, 99 P.3d at 1157 (citation omitted). Defendants' attempt to distort clear and unambiguous policy language into something it was never intended to mean is without merit and borders on frivolous.

The court finds it remarkable—indeed, wholly unreasonable—that an insured person in defendants' position would expect his *homeowner's insurance* policy to serve as a shield against the consequences of litigation arising from marital infidelity, sexual entanglements, and interpersonal drama between the parents and coaches of a little league baseball team. *Powell,* 252 P.3d at 672.

A homeowner's insurance policy is designed to protect against risks associated with the ownership of a home—not to underwrite the fallout of defendants' own personal conduct. The suggestion that such coverage is within the reasonable expectations of the insured stretches the imagination and reflects a fundamental misunderstanding of the purpose and scope of the policy defendants agreed to.

Plaintiff is well within its right to deny indemnification for any and all costs, including any adverse judgments, that may be levied against defendants regarding the underlying litigation. The court finds that the policy is unambiguous in its coverage of personal liability, and when applied to the facts of this case, there is no basis whatsoever for the relief defendants seek.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion to abstain (ECF No. 29) be, and the same hereby is, DENIED.

. . .

. . .

. . .

. . .

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (ECF No. 30) be, and the same hereby is, GRANTED.

DATED March 10, 2026.

_____
UNITED STATES DISTRICT JUDGE